UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,                                        Crim. No. 11-139 (PAM)

               Plaintiff,

v.                                                                              **ORDER**

Kim Rolene Hutterer,

               Defendant.

This matter is before the Court on Defendant Kim Rolene Hutterer's Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A)(i). (Docket No. 97.) The Court appointed counsel and set a briefing schedule on Hutterer's Motion. (Docket Nos. 99–103.) The parties submitted timely briefing and supporting exhibits. (Docket Nos. 104–08.) The Probation and Pretrial Services Office conducted an investigation into Hutterer's release plan. (Docket No. 98.) For the reasons discussed below, Hutterer's motion is denied.

**BACKGROUND**

In 1991, FBI Special Agent Dean Scheidler investigated Hutterer for threatening to blow up a commercial airliner. United States v. Hutterer, 706 F.3d 921, 922 (8th Cir. 2013). After her arrest, she carved "death to Scheidler" on seating in her jail cell. Id. Hutterer was ultimately convicted for providing false information concerning a bomb on an airliner and sentenced to 30 months in prison. Id. While serving that sentence, Hutterer assaulted and threatened to kill Bureau of Prisons Officer Blaine Patterson. Id. Then, once released, Hutterer began sending letters to Officer Patterson at work and obtained his home

addresses and telephone numbers. Id. In September 2010, Hutterer called Officer Patterson's workplace and threatened to kill him. Id. at 922–23. In October 2010 she sent Officer Patterson a letter professing her love and threatened to bomb the facility where he worked. Id. at 923.

While in state custody on an unrelated October 2010 terroristic threats conviction, Hutterer sent sexually explicit, threatening, and harassing letters, telephone messages, and text messages to Agent Scheidler at work and home. Id. These communications continued after her release from state custody in March 2011. Id. Some of the letters included pictures of a knife dripping with blood and had Agent Scheidler's name on it. Id. Other letters described, in explicit detail, how Hutterer planned to killed Agent Scheidler, sleep with him, and commit "other grotesque acts." Id. Some of these communications included Agent Scheidler's private, confidential information. Id. Hutterer also carved Agent Scheidler's name into her arm with a staple. Id. Hutterer's letters included threats to others besides Agent Scheidler and Officer Patterson, including then-Vice President Joseph Biden and Agent Scheidler's family, and also made threats against federal buildings. Id.

Hutterer was charged for these threats by complaint on March 28, 2011, then indicted on April 20, 2011. (Docket Nos. 1, 8.) While the indictment was pending, Hutterer was ordered to have no contact, directly or indirectly, with Agent Scheidler, Agent Scheidler's family, Officer Patterson, or any law enforcement officer. Hutterer, 706 F.3d at 923. Pursuant to a plea agreement, Hutterer pled guilty to making threatening interstate communications and mailing threatening communications. Id. After pleading guilty,

2

Hutterer continued to write letters to Agent Scheidler and his wife, as well as other law enforcement officers. Id.

Hutterer was sentenced on January 9, 2012, to consecutive prison terms of 60 months and 120 months for a total of 180 months' imprisonment, followed by 3 years' supervised release. (Docket No. 54.) This was an upward variance from the guidelines range of 120 to 150 months because of the application of obstruction-of-justice and official-victim enhancements; the Court denied a reduction for acceptance of responsibility. Hutterer, 706 F.3d at 925–26. In pronouncing this upward variance, the Court exclaimed "[t]his is one of the most serious matters that has ever appeared in this court." (Sent. Tr. (Docket No. 59) at 23.) The Court explained the seriousness of threating persons "involved in complex public service," and how the conduct "may not be permitted to exist within a peaceful society." (Id. at 23–24.) The Court further noted the case's increasing complexity and difficulty due to Hutterer's ongoing "incredibly inappropriate" conduct that "shows an unwillingness to even think about trying to survive within a normal structure of society." (Id. at 24.) And while the Court had "deep feelings" about incarcerating mentally ill persons, when faced with a situation in which "the person refuses to accept there is mental illness involved, refuses to be amenable to treatment of mental illness," it only leaves "incarceration and the retention of the individual in that setting so that others can live in freedom." (Id.) The sentence was affirmed on appeal. Hutterer, 706 F.3d at 926.

As of July 26, 2020, Hutterer has served 112 months of her 180-month sentence. She is currently housed at FCI–Waseca. While incarcerated, Hutterer has completed a drug and alcohol treatment program, taken anger management classes, received education in

financial responsibility, and undergone vocational training in cabinetmaking, framing, grounds and turf management, small engine repair, and landscaping. (Docket No. 104-5; Docket No. 108-1.) Providing for good conduct time, Hutterer will be released on April 23, 2024. (Docket No. 104-4 at 2.)

While incarcerated on her current sentence Hutterer has had several disciplinary incidents. On March 19 and 21, 2012, Hutterer attempted to mail correspondence to an individual with whom she is not authorized. (Docket No. 104-3 at 4.) On March 27, 2012, Hutterer carved "CON" into her left forearm. (Id. at 3.) On March 30, 2012, she threatened a staff member with bodily harm. (Id. at 4.) On April 27 and May 3, 2012, Hutterer failed to obey orders. (Id. at 3.) On May 4, 10, and 11, Hutterer threatened bodily harm to staff and inmates via writing. (Id. at 1–2.) On October 11, 2012, she assaulted nursing staff by throwing medication at them. (Id. at 1.) Since October 2012, however, Hutterer has had no disciplinary incidents.

Hutterer is 56 years old and suffers from asthma, diabetes, class 2 obesity, hypertension, hypothyroidism, hyperlipidemia, sleep apnea, and gout. (Docket No. 104-6; Docket No. 106.) Hutterer uses an albuterol inhaler as needed to prevent or relieve an asthma attack. (Docket No. 104-6 at 2; Docket No. 106 at 2 (discussing using inhaler 2-3 times daily due to heat wave).) Hutterer also uses a C-PAP machine. (Docket No. 104-6 at 6; Docket No. 106 at 6.)

**DISCUSSION**

Hutterer requested a reduction in sentence based on the COVID-19 pandemic. (Docket No. 104-1.) The warden denied that request. (Id.) The Government does not

4

dispute that Hutterer exhausted administrative remedies.  See 18 U.S.C. § 3582(c)(1)(A). Hutterer seeks reconsideration of her sentence from this Court, proposing the Court amend her sentences as concurrent rather than consecutive so that she can be immediately released from prison.  Hutterer asserts that, due to her health deficiencies, she will likely not see her 2024 release date if she were to contract COVID-19.

The U.S. Probation and Pretrial Services Office has conducted an investigation and provided input to the Court on Hutterer's request.  (Docket No. 98.)  The Probation Office found that Hutterer's proposed Milwaukee, Wisconsin, housing plan is not appropriate due to potential third-party risks.  (Id.)

The First Step Act allows the Court to order a defendant's release for "extraordinary and compelling reasons."  18 U.S.C. § 3582 (c)(1)(A)(i).  Such reasons include a terminal illness, "a serious physical or medical condition," or other condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility."  U.S.S.G. § 1B1.13, cmt. n.1(a)(ii).  Hutterer has explained how her asthma, diabetes, hypertension, obesity, and hyperlipidemia place her at increased serious risk should she contract COVID-19.  (Docket No. 104, at 2–14.)  And the Government effectively concedes that Hutterer's mélange of maladies represents a "serious physical or medical condition."  (Docket No. 105, at 13–16.)  The Court agrees that Hutterer's health conditions, particularly the combination of her asthma, diabetes, and obesity and its attendant comorbidities, constitute a serious physical or medical condition during the COVID-19 pandemic.

As of Hutterer's filing on July 27, 2020, the BOP reported one active case of COVID-19 among inmates and one among staff at FCI-Waseca. (Def's Mem. (Docket No. 104) at 14).) A week later, the BOP reported two active cases among inmates and two among staff at FCI-Waseca. (Gov't Mem. (Docket No. 105) at 9.) The Government also indicated that, as of July 29, 2020, the BOP was testing over 100 persons at FCI-Waseca "who were potentially exposed to those who tested COVID-positive" but Hutterer was not among that group considered to be at potential risk for exposure. (Id.) As of today's date, however, the BOP again reports only one active case among inmates and one among staff at FCI-Waseca. COVID-19 Coronavirus, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp (last accessed August 19, 2020). While Hutterer certainly highlights serious concerns regarding COVID-19 in the BOP system as a whole, her generalized concerns are not borne out with respect to FCI-Waseca.

Moreover, when reviewing a request to reduce sentence, the Court must also consider the applicable sentencing factors of 18 U.S.C. § 3553(a). 18 U.S.C. § 3582 (c)(1)(A); United States v. Rodd, 966 F.3d 740, 745, 747 (8th Cir. 2020). The factors most relevant here are: (1) the nature and circumstances of the offense and history and the characteristics of the defendant; and (2) the need of the sentence to reflect the seriousness of the offense, promote the respect for the law, and provide just punishment; to afford adequate deterrence for criminal conduct; to protect the public from further crimes of the defendant; to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(1)–(2).

As this Court articulated when originally sentencing Hutterer, her conduct raised serious concerns as to the safety of the public and public servants in particular. Hutterer's criminal conduct focused on persons in complex public service. While Hutterer has, to her credit, engaged in treatment and education while in prison and has had no disciplinary incidents in nearly eight years, she has a repeated history of re-engaging in threatening conduct once released from custody. Hutterer's transformation is most readily attributable to the medical care and correctional treatment she receives from the Bureau of Prisons. The highly regulated prison environment has had a tremendously positive effect on Hutterer's stability. While Hutterer expresses her desire to continue such treatment once released, the Court finds that her ongoing care and treatment in prison is the most effective manner for her to receive said treatment. Simply put, the Court cannot overlook the grave concerns it faced when sentencing Hutterer where her danger to the public remains. Accordingly, Hutterer's request for compassionate release is denied.

Accordingly, **IT IS HEREBY ORDERED that** Defendant Kim Rolene Hutterer's Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A)(i) (Docket No. 97) is **DENIED**.

Dated: August 19, 2020

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge